**Edward T. SPLANE and Paralyzed Veterans of America, Petitioners,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Respondent.**

No. 99–7078.

United States Court of Appeals, Federal Circuit.

June 23, 2000.

Linda E. Blauhut, Paralyzed Veterans of America, of Washington, DC, argued for petitioners. With her on the brief was Michael P. Horan.

Elizabeth M. Hosford, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. On the brief were David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director; Kathryn A. Bleecker, Assistant Director; and Paul M. Faver, Attorney. Of counsel on the brief were Richard J. Hipolit, Acting Assistant General Counsel; and David J. Barrans, Staff Attorney, Department of Veterans Affairs, Washington, DC.

Before MICHEL, CLEVENGER, and RADER, Circuit Judges.

CLEVENGER, Circuit Judge.

Petitioners, Edward T. Splane and the Paralyzed Veterans of America, seek review of a precedential opinion issued by the Department of Veterans Affairs ("DVA") general counsel on October 2, 1998 ("VAOPGCPREC 14–98"). In that opinion, the general counsel responded to a request from the Chairman of the Board of Veterans' Appeals ("Board") for guidance concerning three questions of law presented in an appeal filed by Mr. Splane. Petitioners seek to have VAOPGCPREC 14–98 declared invalid on the grounds that the opinion suffers from a number of procedural and substantive defects. We disagree with Petitioners that VAOPGCPREC 14–98 is procedurally defective under either the Administrative Procedure Act ("APA") or the Freedom of Information Act ("FOIA"). However, because we agree that VAOPGCPREC 14–98 contains a statutory interpretation that is not in accordance with law, we vacate that portion of the opinion.

I

Splane, a veteran, appealed his claim for service connection for multiple sclerosis ("MS") to the Board. As part of his substantive case, Splane relied on 38 U.S.C. § 1112(a) (1994), which states that:

> in the case of any veteran who served for ninety days or more during a period of war ... multiple sclerosis developing a 10 percent degree of disability or more within seven years from the date of separation from such service ... shall be considered to have been incurred in or aggravated by such service, notwithstanding there is no record of evidence of such disease during the period of service.

Accordingly, Splane sought to show that he had developed an MS-related disability of at least 10 percent within 7 years of being discharged from the service.

On April 7, 1995, the Board denied Splane's claim, finding that Splane had exhibited symptoms of MS in high school, before entry into service. The Board concluded that, although MS was present to a compensable degree within the 7-year presumptive period following discharge, Splane was not entitled to the statutory

presumption of incurrence or aggravation because his condition predated his entry into the service and was not aggravated thereby. Splane appealed the Board's decision to the Court of Appeals for Veterans Claims ("CAVC").

On May 7, 1997, Splane and counsel for the DVA filed a joint motion for remand for further evidentiary development and a supplemental opinion. The joint motion for remand requested that the Board order a new independent medical expert ("IME") opinion with regard to the severity of Splane's MS during the 7-year presumptive period. The remand motion also requested that the Board remove, temporarily, a previous Board medical advisor's opinion ("BMAO") from Splane's record during the IME's evaluation, or provide an explanation as to why Splane would not be prejudiced by the IME's knowledge of the earlier BMAO. Finally, the Board was requested to consider whether the presumption of aggravation, provided under 38 U.S.C. § 1112(a)(4), is applicable where the facts show that a veteran exhibited symptoms of MS before entering the service. The joint remand motion was granted on May 8, 1997.

On remand, and before any arguments were heard, the Chairman of the Board requested an opinion from DVA's general counsel on legal issues involved in Splane's case. In response to the Board's request, the DVA general counsel issued precedential opinion VAOPGCPREC 14–98, dated October 2, 1998, a synopsis of which was published in the Federal Register on October 22, 1998. *See* 63 Fed.Reg. 56,705 (Oct. 22, 1998). The opinion concluded that 38 U.S.C. § 1112(a) does not establish a presumption of aggravation for a chronic disease that existed before entry into the service. It further concluded that a document in a veteran's file could be temporarily removed for the purpose of obtaining an "untainted" IME opinion. Finally, it concluded that the requirement of 38 U.S.C. § 7109(c), that the Board "furnish the

claimant with a copy of [an IME] opinion when it is received by the Board," is satisfied if a copy of the opinion is delivered to the claimant's authorized representative.

On March 5, 1999, Splane's counsel requested in writing that the DVA general counsel withdraw VAOPGCPREC 14–98, arguing that it was not contemplated by the joint remand agreement. The general counsel denied this request. Thereafter, Splane filed the present petition for review, joined by the Paralyzed Veterans of America. In the meantime, Splane petitioned the CAVC for a writ of mandamus to reinstate his appeal to that court pending the outcome of the present challenge; however, that petition was denied.

■ We have jurisdiction over this petition pursuant to 38 U.S.C. § 502 (1994), which states: "An action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers ... is subject to judicial review [which] may be sought only in the United States Court of Appeals for the Federal Circuit." The action now being challenged is the creation and publication of an agency rule—in the form of a precedential general counsel opinion—which falls under the ambit of sections 552(a)(1) and 553. Accordingly, our jurisdiction in this case is proper.

II

■ Petitioners challenge the procedural correctness of the general counsel's opinion, as well as its substance. Procedurally, Petitioners argue that VAOPGCPREC 14–98 is a "legislative rule," subject to the notice and comment rulemaking requirements of 5 U.S.C. § 553 (1994), rather than an interpretative rule that is exempt from notice and comment rulemaking procedures. Petitioners also argue that the DVA failed to comply with 5 U.S.C. § 552(a)(1) by not publishing the entire text of VAOPGCPREC 14–98 in the Federal Register.[1] Finally, Petitioners ar-

---

1. Petitioners also argue that the Agency vio-

lated its own regulation regarding notification

gue that the Board lacked statutory authority to request an opinion of the DVA general counsel that was determinative in a pending individual case. Substantively, Petitioners argue that VAOPGCPREC 14–98 contradicts the statutes it purports to interpret, particularly 38 U.S.C. §§ 1112(a)(4) and 7109.

## A

■ Petitioners first argue that VAOPGCPREC 14–98 is procedurally defective because it was not issued in accordance with APA notice and comment rulemaking procedures. *See* 5 U.S.C. § 553 (1994). This argument is based on the assumption that VAOPGCPREC 14–98 is a "legislative" rule rather than an "interpretive" rule. The distinction is important because the APA exempts from notice and comment rulemaking any "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A) (1994).

■ We have explained the distinction between substantive (*i.e.*, legislative) rules and interpretive rules as follows:

> "[S]ubstantive rules" [are] those that effect a change in existing law or policy or which affect individual rights and obligations. "Interpretive rules," on the other hand, clarify or explain existing law or regulation and are exempt from notice and comment under section 553(b)(3)(A). . . . "[A]n interpretive statement simply indicates an agency's reading of a statute or a rule. It does not intend to create new rights or duties, but only reminds affected parties of existing duties."

*Paralyzed Veterans of America v. West,* 138 F.3d 1434, 1436 (Fed.Cir.1998) (quoting *Orengo Caraballo v. Reich,* 11 F.3d 186, 195 (D.C.Cir.1993)) (other citations omitted). With this guidance in mind, we must decide whether VAOPGCPREC 14–98 is essentially legislative or interpretive in nature. We conclude that the opinion is essentially interpretive because it represents the agency's reading of statutes and rules rather than an attempt to make new law or modify existing law.

■ Each section of the opinion begins with the text of the relevant statute, *e.g.,* 38 U.S.C. § 1112(a), and the DVA's corresponding regulation, *e.g.,* 38 C.F.R. §§ 3.307(a), (c). The opinion then proceeds to interpret the meaning of the statute with respect to the specific question presented, invoking the traditional rules of statutory interpretation, including textual and contextual analysis and a study of the legislative history. Notably, the opinion does not engage in the type of "policy analysis" one would expect in the rulemaking context, such as weighing the pro's and con's of one course of action versus another. Finally, the opinion makes clear, throughout its text, that the agency is engaging in statutory interpretation, rather than "gap filling" or an exercise of its rulemaking power. *See, e.g.,* VAOPGCPREC 14–98 at 3 ("we conclude that the regulation represents a proper *interpretation* of section 1112(a)" (emphasis added)). The D.C. Circuit has recognized that "an agency's characterization of its own action, while not decisive, is a factor [to] consider. . . ." *American Hosp. Ass'n v. Bowen,* 834 F.2d 1037, 1047 (D.C.Cir. 1987).

Petitioners argue, however, that VAOPGCPREC 14–98 must be deemed legislative in nature because it was intended to have the "force and effect of law." They point to 38 U.S.C. § 7104(c), which states that "[t]he Board shall be bound in its decisions by the . . . precedent opinions of

---

of parties when an opinion is being sought. We cannot reach this issue, however, because it falls outside our jurisdiction under 38 U.S.C. § 502. Specifically, the Agency's alleged failure to personally notify Splane or his attorney of the requested opinion is not "[a]n

action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both)" refers. Instead, the alleged violation concerns 38 C.F.R. §§ 20.901, 20.903, which do not warrant "direct review" under § 502.

the chief legal officer of the Department." According to Petitioners, this is a critical factor in determining whether a rule is legislative or interpretive, citing *Virginia Department of Education v. Riley*, 86 F.3d 1337, 1347 (4th Cir.), *vacated en banc*, 106 F.3d 559 (4th Cir.1997) and *Chief Probation Officers v. Shalala*, 118 F.3d 1327, 1333 (9th Cir.1997). Both *Riley* and *Chief Probation Officers* cite *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995), for the proposition that interpretive rules do not have the force and effect of law.

*Guernsey* involved a challenge to the validity of a Medicare reimbursement guideline, adopted without notice and comment procedures. The Supreme Court held that the agency's rule was not invalid for lack of notice and comment because it was "a prototypical example of an interpretive rule issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." 514 U.S. at 99, 115 S.Ct. 1232 (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 302, n. 31, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979)) (internal quotations omitted). As an aside, the Court noted that "[i]nterpretive rules do not require notice and comment, although ... they also do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Id.*

According to Petitioners, because VAOPGCPREC 14–98 is binding on the Board by statute, it necessarily has the "force and effect of law," which, under the corollary logic of *Guernsey*, means that it cannot be an interpretive rule. In other words, Petitioners assert that any agency rule that is binding on an *agency tribunal* has the "force and effect of law," and must therefore be deemed legislative in nature. We disagree.

The Supreme Court's statement in *Guernsey* must be read in context. In particular, we note that the interpretive rule at issue in *Guernsey* (affecting the agency's reimbursement of Medicare costs

to hospitals) was certainly binding on agency officials insofar as any directive by an agency head must be followed by agency employees. *See Metropolitan Sch. Dist. v. Davila*, 969 F.2d 485, 493 (7th Cir.1992) ("All rules which interpret the underlying statute must be binding because they set forth what the agency believes is congressional intent."). In *Chrysler*, which was relied upon in *Guernsey*, the Court faced the task of interpreting a statute that contained a special exception for activities "authorized by law." The question before the Court was whether a certain agency regulation had the necessary "force and effect of law" to trigger the statutory exception. The *Chrysler* court stated:

> It has been established in a variety of contexts that properly promulgated, substantive agency regulations have the "force and effect of law." This doctrine is so well established that agency regulations implementing federal statutes have been held to preempt state law under the Supremacy Clause.

441 U.S. at 295–96, 99 S.Ct. 1705.

It is clear from *Chrysler* and *Guernsey* that the Court's reference to a regulation having the "force and effect of law" is to the binding effect of that regulation on tribunals *outside* the agency, not on the agency itself. *See also Animal Legal Defense Fund v. Quigg*, 932 F.2d 920, 929–30 (Fed.Cir.1991) ("A limitation of [agency] discretion, by itself, does not make an agency action 'substantive.'"). In the present case, because Petitioners do not suggest that VAOPGCPREC 14–98 has any binding effect whatsoever outside the agency, on the CAVC, or on this court, their reliance on *Guernsey* is misplaced.

We conclude that VAOPGCPREC 14–98 is an interpretive rule and therefore not subject to the notice and comment procedures of the APA.

**B**

Petitioners next argue that, even if notice and comment procedures are not re-

quired under the APA for the general counsel's opinion in question, the DVA violated the FOIA publication requirements of 5 U.S.C. § 552(a)(1) (1994) by publishing only a synopsis, rather than the entire text, of VAOPGCPREC 14–98 in the Federal Register. The FOIA requires agencies to publish "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D) (1994). General counsel opinions are specifically included in the latter category pursuant to 38 U.S.C. § 501(c), which states: "[i]n applying section 552(a)(1) of title 5 to the Department, the Secretary shall ensure that subparagraphs (C), (D), and (E) of that section are complied with, *particularly with respect to opinions and interpretations of the General Counsel.*" (emphasis added). *See also* 38 C.F.R. § 14.507(b) ("Written legal opinions [of the General Counsel] designated as precedent opinions ... shall be considered by Department of Veterans Affairs to be subject to the provisions of 5 U.S.C. 552(a)(1).").

The government argues that section 552(a)(1)(D) does not require publication of the legal analysis or basis for interpretive rules. It contrasts section 552(a)(1)(D) with section 553, which sets forth the notice and comment requirement for legislative rulemaking. Because section 553 requires publication of "a concise general statement of ... basis and purpose," the government argues that the omission of such a statement in section 552(a)(1)(D) indicates Congress' intent to treat the publication of legislative rules differently than interpretive rules. We need not reach this argument, however, because Petitioners have failed to establish that they have been harmed by the failure to publish the full text of VAOPGCPREC 14–98 in the Federal Register. We therefore express no opinion regarding the merits of the

government's statutory interpretation argument.

Section 552(a) of title 5 states:

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.

■ Petitioners assert that the DVA was required, pursuant to the FOIA, to publish the full text of the legal analysis contained in VAOPGCPREC 14–98. However, Petitioners have failed to show that they were ever "required to resort to" or "adversely affected by" this legal analysis before receiving actual notice thereof. In the case of Mr. Splane, he received actual notice of the legal analysis in VAOPGCPREC 14–98, via his attorney, on January 27, 1999. As far as we are aware, there has not yet been a final judgment in Splane's appeal to the Board, and, therefore, the DVA's failure to publish its legal analysis in the Federal Register has not harmed Splane. The Paralyzed Veterans of America has likewise made no showing of harm. Accordingly, we conclude that any failure of the DVA to meet the FOIA publication requirements with respect to VAOPGCPREC 14–98, was harmless to Petitioners. *See New York v. Lyng,* 829 F.2d 346, 354 (2d. Cir.1987) ("the requirement for publication [of regulations] attaches only to matters which if not published would adversely affect a member of the public" (quotations and citations omitted)). *Accord United States v. Yuzary,* 55 F.3d 47, 53 n. 10 (2d. Cir.1995).

C

■ Petitioners broadly challenge the Board's statutory authority to request opinions from the Agency's general counsel, at least where such opinions will be determinative in individual cases. We have jurisdiction to consider this argument, pursuant to 38 U.S.C. § 502, be-

cause an agency's statutory authority to issue interpretive rules is implicit in sections 552(a)(1) and 553 of title 5, which, by reference, provide the basis of our jurisdiction under 38 U.S.C. § 502. Unlike Petitioners' argument that the Agency violated its own regulations by not notifying Splane that a legal opinion was being sought in his case, Petitioners' challenge to the DVA's statutory authority to issue interpretive rules at the request of the Board is reviewable under 38 U.S.C. § 502 because it directly challenges an agency action—the issuance of an interpretive rule—that is referred to in sections 552(a)(1) and 553 of title 5.

 Petitioners first argue that, because the Board was established by statute, see 38 U.S.C. §§ 7101–7110, and because Congress has not expressly authorized the Board to request opinions in individual cases, the DVA cannot *delegate* such authority to the Board. Thus, Petitioners challenge 38 C.F.R. § 20.901(c), which authorizes the Board to request general counsel opinions, as being without statutory support. The government responds that, although Congress has statutorily vested the Board with certain functions, that in no way precludes the Secretary from delegating other authority to the Board as authorized by 38 U.S.C. § 512(a) ("Delegation of authority; assignment of functions and duties"). We agree with the government.

 The Supreme Court has said that whether an agency head has the implicit ability to delegate his powers to subordinates depends on whether Congress has expressly granted the power to delegate. *See Cudahy Packing Co. v. Holland,* 315 U.S. 357, 366, 62 S.Ct. 651, 86 L.Ed. 895 (1942) ("the subpoena power shall be delegable only when an authority to delegate is expressly granted"). In this case, 38 U.S.C. § 512(a) is such a grant of authority. That section states:

Except as otherwise provided by law, the Secretary may assign functions and duties, and delegate, or authorize successive redelegation of, authority to act and to render decisions, with respect to all laws administered by the Department, to such officers and employees as the Secretary may find necessary.

Since the Secretary may delegate "authority to act ... with respect to all laws administered by the Department," we see no problem with the Secretary delegating to the Board the authority to request legal opinions from the agency's general counsel. Since there is no law *prohibiting* the Board from doing this, and since section 512(a) says "except as otherwise provided by law," this delegation is clearly acceptable under *Cudahy Packing.*

Petitioners also argue that the Chairman's request for a legal opinion violated Congress' express prohibition that the Chairman of the Board not participate in individual appeals, except as a member of a panel. *See* 38 U.S.C. § 7102(b) (Supp. 2000).[2] The government responds that, as the head of the Board, the Chairman's signed request for an opinion is merely *pro forma,* and does not necessarily indicate that the Chairman has substantively participated in the appeal. We agree. As there is no evidence in this case that the Chairman substantively participated in Splane's appeal, we perceive no violation of section 7102(b).

Finally, Petitioners argue that the Board's practice of requesting binding opinions in individual cases essentially allows the DVA to issue binding rules through adjudication, *i.e.,* without following proper APA procedures. Petitioners suggest that, in a case where the application of existing law is uncertain, the Board should either give the veteran the benefit of the doubt, or rule against the veteran

**2.** 38 U.S.C. § 7102(b) (Supp.2000) ("A proceeding may not be assigned to the Chairman as an individual member. The Chairman may participate in a proceeding assigned to a panel or in a reconsideration assigned to a panel of members.").

and let the veteran appeal the issue to the CAVC and the Federal Circuit.

We fail to see how Petitioners have been harmed by the issuance of a general counsel opinion in this case. Since VAOP-GCPREC 14–98 is not binding on the CAVC, Splane will be in no worse condition if he is adversely affected by the opinion than he would be if the Board simply ruled against him without the benefit of a general counsel opinion. In both instances, he can appeal to the CAVC and have his case considered on the merits. The CAVC is charged with setting aside "rules[ ] and regulations issued or adopted by the Secretary ... found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(3) (1994). Petitioners have failed to explain how this standard of review would differ because of the existence of a precedential general counsel opinion. Accordingly, we are not persuaded that the Board's request for an opinion in this case was harmful to Petitioners.

### III

Petitioners argue that the first and third conclusions stated in VAOPGCPREC 14–98 are inconsistent with the statutes they interpret. Neither Petitioners nor the government raise any question about the second conclusion, which opined that a veteran's medical record could be temporarily removed from the veteran's file while he obtained a new IME opinion. We, of course, express no view on the second conclusion.

■ We have authority, under 5 U.S.C. § 502, to "directly review rules promulgated by [DVA], including substantive rules of general applicability, statements of general policy and interpretations of general applicability." *LeFevre v. Secretary of Veterans Affairs,* 66 F.3d 1191, 1196 (Fed.Cir. 1995). Section 502 invokes the APA standard of review, pursuant to which we must determine if the Secretary's position is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### A

■ The first conclusion in the DVA general counsel's opinion is an interpretation of 38 U.S.C. § 1112(a). That statute states in pertinent part:

> For the purposes of section 1110 of this title, and subject to the provisions of section 1113 of this title, in the case of any veteran who served for ninety days or more during a period of war—
>
> . . . . .
>
> multiple sclerosis developing a 10 percent degree of disability or more within seven years from the date of separation from such service ... shall be considered to have been incurred in *or aggravated by* such service, notwithstanding there is no record of evidence of such disease during the period of service.

(Emphasis added.).

We note from the outset that the words "or aggravated by" seem to indicate—purely as a matter of logic—that Congress meant section 1112(a) to apply to those situations where MS predated entry into the service and became aggravated during service. Nevertheless, the DVA general counsel's opinion interprets section 1112(a) differently than the plain meaning of the statute suggests. The opinion acknowledges that, when "[v]iewed in isolation, the phrase 'incurred in or aggravated by' may suggest that Congress intended to create a presumption of aggravation for chronic diseases existing prior to service." VAOPGCPREC 14–98 at 3. However, the opinion goes on to conclude that "Congress did not intend to establish, in section 1112(a), a presumption of aggravation for diseases existing prior to service." *Id.*

In support of this conclusion, the opinion traces the history of the Agency's presumption of service connection for chronic diseases, stretching back some 80 years. Citing legislative history from the Act of

**1068**

August 9, 1921, ch. 57, § 18, 42 Stat. 147, 153–54, which amended the War Risk Insurance Act, the opinion suggests that, by instituting the presumption of service connection for certain chronic diseases, Congress intended only to account for such diseases that developed *during* service or subsequent to service. However, because there was an unrebuttable presumption, prior to 1933, that any disease not recorded on a veteran's entrance physical was incurred after the veteran's entry into the service, Congress included an "aggravation" clause to theoretically account for "diseases which may have existed prior to service but which, under the conclusive presumption of soundness [that existed at that time], were required to be service connected on the same basis as diseases which were incurred in service or initially manifest within the presumptive period." VAOPGCPREC 14–98 at 8.

The opinion points out that the presumption of soundness—which was unrebuttable in 1921—became *rebuttable* with the adoption of Veterans Regulation No. 1, Exec. Order No. 6089, on March 31, 1933. According to the opinion, this rendered obsolete the "aggravation" clause in statutes dealing with the presumption of service connection for chronic diseases. As the opinion states:

> By eliminating the formerly conclusive presumption of soundness, that provision arguably rendered obsolete the provisions referring to aggravation of preexisting diseases in relation to the presumption of service connection for chronic diseases. The fact that Veterans Regulation No. 1 and subsequent laws continued to use the phrase "incurred in or aggravated by service" appears to reflect the usage which had by then become well established in the prior statutes and does not appear to reflect any intent to expand the law to establish a presumption of in-service aggravation for preexisting diseases which are not subject to the presumption of

soundness, or as to which the presumption has been rebutted.

VAOPGCPREC 14–98 at 10. Thus, the position of the DVA general counsel is that the phrase "or aggravated by"—as it exists today in section 1112(a)—is merely a vestige of an earlier provision that was long ago rendered obsolete. The fact that the phrase has continuously been carried on the books since 1933 is accounted for in the opinion as something akin to a scrivener's error. We cannot agree with this interpretation.

■ Where the intent of Congress on a particular question is clear, the courts and the agency "must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). To determine Congress' intent, we employ the traditional tools of statutory construction. *See id.* at 843 n. 9, 104 S.Ct. 2778. Thus, we begin with the text of the statute itself. *See United States v. Gonzales,* 520 U.S. 1, 4, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) ("Our analysis begins, as always, with the statutory text."). We must construe a statute, if at all possible, to give effect and meaning to all its terms. *See Lowe v. Securities & Exch. Comm'n,* 472 U.S. 181, 207–08 n. 53, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985); *Inhabitants of Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883) ("It is the duty of the court to give effect, if possible, to every clause and word of a statute....").

■ As mentioned above, the most logical reading of section 1112(a) indicates that Congress intended to include preexisting conditions in the presumption of in-service occurrence. Indeed, it is difficult to imagine an interpretation of section 1112(a) that would suggest otherwise without completely reading the words "or aggravated by" out of the statute. The legislative history cited in the general counsel's opinion, while not altogether unpersuasive, cannot overcome the canons of construc-

tion that require us to give effect to the clear language of a statute and avoid rendering any portions meaningless or superfluous.

However, the government argues that the words "or aggravated by" must be read in context with the remainder of section 1112(a). Specifically, it points to paragraph (2) of section 1112(a), which states that the presumption of service connection for *tropical diseases* arises when such diseases become manifest to a compensable degree "within one year from the date of separation from such service, *or at a time when standard or accepted treatises indicate that the incubation period thereof commenced during such service.*" (Emphasis added). Based on this, the government argues that the presumption period for MS, like that for tropical diseases, was based on a presumed "incubation period" for the disease. Because paragraph (2) refers to an incubation period for tropical diseases that places the incurrence of the disease *during* service, the government asserts that the same assumption must apply for MS. Thus, according to the government, Congress intended only to cover the possibility that MS could be incurred *in service* but not manifest until several years after service. This argument is flawed.

First, we note that paragraph (2), which relates to tropical diseases, is not *in pari materia* with paragraph (4), which deals with MS. The language of these two paragraphs does not track. They deal with different diseases, and there is no indication in section 1112(a) that they were intended to be read together. *Cf. Imazio Nursery, Inc. v. Dania Greenhouses,* 69 F.3d 1560, 1564 (Fed.Cir.1995) (all the parts of an act *relating to the same subject* should be considered together, and not each by itself). Second, it is unreasonable to assume that Congress did not anticipate the possibility that a veteran, who had nonsymptomatic MS before service, might be exposed to such aggravating conditions during service that he would become disabled to a compensable degree after ser-

vice. Indeed the plain language of section 1112 indicates that Congress was aware of this very possibility, and sought to give veterans the "benefit of the doubt" when it occurred.

Because neither the general counsel's opinion, nor the government's brief, provides a sufficiently compelling reason to read the words "or aggravated by" out of section 1112(a), we conclude that VAOP-GCPREC 14–98 interprets the statute in a manner that is not in accordance with law.

### B

■■■ The other point challenged by Petitioners is the general counsel's conclusion that, by sending a copy of an IME opinion to a claimant's representative, the Agency complies with 38 U.S.C. § 7109(c), which provides that:

> [t]he Board shall furnish a claimant with notice that an advisory opinion has been requested under this section with respect to the claimant's case and shall furnish the claimant with a copy of such opinion when it is received by the Board.

The regulation implementing section 7109(c) states:

> When an opinion is requested by the Board ... the Board will notify the appellant and his or her representative, if any. When the opinion is received by the Board, a copy of the opinion will be furnished to the appellant's representative or ... to the appellant if there is no representative.

38 C.F.R. § 20.1001 (1999).

Thus, Petitioners argue that the DVA's regulation is inconsistent with its authorizing statute because the regulation allows the Board to furnish an IME opinion to a claimant's attorney, rather than to the claimant himself. We disagree with this assertion.

In *Irwin v. Department of Veterans Affairs,* the Supreme Court considered a similar argument and reached the following conclusion:

Under our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.... To read the term "receipt" to mean only "actual receipt by the claimant" would render the practice of notification through counsel a meaningless exercise.

498 U.S. 89, 92, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (quotations and citations omitted). The same reasoning applies here. Accordingly, we conclude that the DVA's regulation, 38 C.F.R. § 20.1001, is not inconsistent with 38 U.S.C. § 7109(c).

## CONCLUSION

There are no procedural infirmities under the APA with respect to VAOP-GCPREC 14–98. The opinion is clearly in the nature of an interpretive rule and is therefore exempt from APA notice and comment rulemaking procedures. Under the FOIA, publication of an "abstract" of the opinion, rather than the full text, was harmless to Petitioners, since there was no showing that they were required to resort to, or were adversely affected by, the underlying legal analysis of the opinion before receiving actual notice thereof.

Substantively, we conclude that the general counsel's interpretation of 38 U.S.C. § 1112(a), as articulated in VAOP-GCPREC 14–98, is not in accordance with law and is therefore in excess of statutory authority, *see* 5 U.S.C. §§ 706(2)(A), (C). For this reason, we must vacate that portion of VAOPGCPREC 14–98 which provides interpretation and guidance to the Board regarding 38 U.S.C. § 1112(a). As no other remedy is warranted at this time, *see Chlorine Chemistry Council v. Environmental Protection Agency*, 206 F.3d 1286, 1291 (D.C.Cir.2000), a partial vacatur is all that is ordered.

## COSTS

No costs.

*VACATE–IN–PART*