### PARALYZED VETERANS OF AMERICA, Petitioner,

### v.

### SECRETARY OF VETERANS AFFAIRS, Respondent.

#### Docket No. 01–7100.

United States Court of Appeals, Federal Circuit.

DECIDED: Oct. 17, 2002.

---

Michael P. Horan, Paralyzed Veterans of America, argued for petitioner. With him on the brief was Morgain M. Sprague.

Lawrence N. Minch, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Robert E. Kirschman, Assistant Director. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel; and David J. Barrans, Attorney, Department of Veterans Affairs, of Washington, DC.

Before MICHEL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

A veterans' organization filed in this court a petition to review an opinion of the General Counsel of the Department of Veterans Affairs ("Department"). The opinion was rendered to, and in response to a request by, the Chairman of the Department's Board of Veterans' Appeals ("Board") for legal advice on issues involved in a pending case before the Board. We hold that this court is not authorized to review directly the opinion of the Department's General Counsel in this case, and therefore dismiss the petition for review for lack of jurisdiction.

I

The Chairman of the Board made a written request, in the form of a memorandum, to the Department's General Coun-

sel. The Chairman described the facts in "[t]his case," which involved a claim to compensation under 38 U.S.C. § 1151. The claim was that the Department's failure to diagnose a veteran's cardiac illness in examining him at an outpatient clinic resulted in the veteran's subsequent death of a heart attack. The Chairman requested the General Counsel's "opinion" on two questions: (1) "does 38 U.S.C.A. § 1151 ... contemplate compensation for the absence or failure (by omission) of VA to diagnose or treat an underlying disease or injury, or does 38 U.S.C.A. § 1151 only contemplate compensation for medical treatment or submission to an examination which involves acts of commission by VA?"; (2) if the former standard applies, "what are the essential elements of such a claim which must be established in order for a claimant to prevail?"

The Chairman acted pursuant to a Department regulation that authorized specified officials to request formal legal advice from the General Counsel, including the interpretation of statutes or regulations. 38 C.F.R. § 14.502 (2001). A statute provides that "[t]he Board shall be bound in its decisions by the regulations of the Department, instructions of the Secretary, and the precedent opinions of the chief legal officer of the Department," 38 U.S.C. § 7104(c) (2000), and the Department treats such opinions as precedential and requires that its officials and employees follow them. 38 C.F.R. § 14.507 (2001).

Almost two years later, the General Counsel responded in an 11 page single-spaced memorandum to the Chairman, which, after the extensive legal analysis, answered the two questions the Chairman had posed.

The Paralyzed Veterans of America then filed in this court a petition to review "the validity of" the General Counsel's opinion. It described that opinion "as a final rule."

It stated that it had standing to file the petition since it "is a national not-for-profit membership organization whose members include veterans who have filed claims with VA, under 38 U.S.C.A. § 1151 (West 1991), because of additional disability sustained while receiving medical treatment from the VA."

II

■ Under 38 U.S.C. § 502, "[an] action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers [with an exception not applicable here] is subject to judicial review ... in accordance with chapter 7 of title 5 [the Administrative Procedure Act] and ... only in" this court. Those two references to title 5 are to provisions of that Act. The first reference—Section 552(a)—requires agencies to make public specified information, including publication in the Federal Register, of "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D) (2000). Section 553 specifies the procedures to be followed in "rule making." *Id.* § 553 (2000).

As this court explained in *LeFevre v. Secretary, Department of Veterans Affairs,* 66 F.3d 1191, 1196 (Fed.Cir.1995):

Section 551(4) of title 5 defines a rule as the 'whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency.'

As our predecessor court explained: 'rule making is legislative in nature, is primarily concerned with policy considerations for the future rather than the

evaluation of past conduct, and looks not to the evidentiary facts but to policy-making conclusions to be drawn from the facts.' (citing *Am. Express Co. v. United States,* 60 C.C.P.A. 86, 472 F.2d 1050 (C.C.P.A.1973)).

Thus, for the General Counsel's opinion to be directly reviewable by this court, it must constitute a "rule" within section 552(a)(1)(D).

Although the definition of "rule" is broad, the opinion of the Department's General Counsel does not come within its coverage. That opinion, rather, is a part of the Department's administrative quasi-judicial procedure for adjudicating veterans' claims.

The General Counsel rendered his opinion in response to a written request from the Chairman of the Board of Veterans' Appeals. The Chairman requested the opinion to aid him in deciding the case before the Board, and the opinion, which was addressed to him, would be used for that purpose. The rendering of the opinion was an integral part of the Board's adjudicatory process. The opinion itself had no immediate or direct impact upon any veteran. Whatever impact it had resulted from the Board's application of it in the particular case. The fact that the General Counsel's opinion is a precedent that binds the Department's officials and employees does not change its inherent nature or make it a rule.

■ The appropriate procedure for challenging the opinion's statutory interpretation would be for the veteran to await the decision of the Board in his case and, if that decision were adverse, to challenge it before the Court of Appeals for Veterans Claims ("Veterans Court") and then, if the veteran lost there, to seek further review in this court. *Cf. Donovan v. West,* 158 F.3d 1377, 1380 (Fed.Cir.1998) (interpreting a Department regulation, the Board cited and relied on a precedential opinion of the General Counsel construing the provision, "which bound it"). On the record before us, we do not know how the Board would decide the case in light of the General Counsel's opinion or even whether it has decided it yet.

Indeed, 38 U.S.C. § 502 apparently contemplates that the foregoing judicial review procedure will be followed in cases such as this. After stating that judicial review of the Secretary's actions shall be conducted in accordance with chapter 7 of title 5 (the Administrative Procedure Act), it states: "[h]owever, if such review is sought in connection with an appeal brought under the provisions of chapter 72 of this title, the provisions of that chapter shall apply rather than the provisions of chapter 7 of title 5." *Id.* Chapter 72 deals with the Veterans Court and gives that court "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." 38 U.S.C. § 7252(a) (2000). Since Veterans Court review of the decision of the Board, with possible further review by this court, would permit full judicial consideration of the conclusions of the General Counsel's opinion, it is unlikely that Congress intended to permit direct review in this court of the General Counsel's opinion rendered for the Board.

Apparently the Department itself does not view the General Counsel's formal opinions as rules. As noted previously, the Administrative Procedure Act requires "agenc[ies]," which include departments (*see* 5 U.S.C. § 551(1)), to "separately state and currently publish in the Federal Register ... substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D) (2000). The Depart-

ment, however, did not publish the 11 page General Counsel's opinion in the Federal Register.

Instead, it published there a 58 line, single column summary of that opinion, together with summaries of 14 other opinions of the General Counsel and an announcement that a particular prior opinion of that official was being withdrawn. Summary of Precedent Ops. of the General Counsel, 69 Fed.Reg. 33309–13 (June 21, 2001). It stated that it "is publishing a summary of legal interpretations issued by the Department's Office of General Counsel involving veterans' benefits under laws administered by VA ... to provide the public, and, in particular, veterans' benefit claimants and their representatives, with notice of VA's interpretations regarding the legal matters at issue." *Id.* at 33309. In contrast, apparently the Department customarily publishes in the Federal Register the full text of its rules and regulations. Indeed, five days after publishing the summaries the Department published the full text of an "Interim Final Rule" governing certain grants to states. Grants to States for Constr. & Acquisition of State Home Facilities, 66 Fed.Reg. 33845–01 (June 26, 2001). See also a different "Final Rule" published at 66 Fed.Reg. 56613–01 (Nov. 9, 2001).

The General Counsel's opinion in this case is different from the document that we held in *LeFevre* to be a rule and therefore directly reviewable. That case involved a determination by the Secretary that, pursuant to the Agent Orange Act of 1991, 38 U.S.C. § 1116 (Supp.1993), certain diseases but not others were entitled to a presumption of causation by exposure to herbicides in Vietnam. The Secretary's determination followed and reflected a lengthy study of the problem and recommendations by the National Academy of Science, and a review of the Academy's report by an expert task force the Secretary had appointed. "The Secretary adopted the task force's recommendations, and published a detailed explanation of his decision in the Federal Register." *LeFevre*, 66 F.3d at 1196 (citation omitted). We held:

> The determination was a rule because it was a 'statement of general ... applicability and future effect designed to implement ... or prescribe ... law or policy....' It prescribed the basis on which the Department would adjudicate every claim seeking disability or survivor benefits for specified diseases allegedly caused by exposure to herbicides in Vietnam. It reflects the result of a process that was 'legislative in nature, [was] primarily concerned with policy considerations for the future ..., and look[ed] to policy-making conclusions to be drawn from the facts.' Congress delegated to the Secretary the authority to determine whether or not to create a presumption of service connection between certain diseases and military service in Vietnam, and that determination would control the decisions in all subsequent cases involving the issue. *Id.* at 1196–97.

The differences between the two cases are significant, and call for a different result here. There the Secretary made his determination pursuant to and in implementation of, a statutory directive. Here the General Counsel's opinion was rendered in response to a request from a Department official in connection with the Board of Veterans' Appeal's consideration of an appeal by a particular veteran. There the process through which the Secretary made his determination was "legislative in nature ... primarily concerned with policy considerations for the future." Here the General Counsel appears to have engaged in no more than the usual process

of statutory interpretation. There the determination was made by the Secretary himself and the full and lengthy text of it was published in the Federal Register. Here the action was taken not by the Secretary but by an official of the Department, and only a relatively brief summary of the opinion was published in the Federal Register. There the Secretary's determination took the form of a general and detailed explanation of his decision. Here the General Counsel's opinion was rendered as a memorandum to the Chairman of the Board of Veterans' Appeals that responded to the Chairman's request for an opinion.

In sum, unlike the Secretary's determination in *LeFevre*, the General Counsel's opinion in this case was not a "rule" because it was not "a 'statement of general . . . applicability and future effect designed to implement . . . or prescribe . . . law or policy.'" 66 F.3d at 1196. It was only an integral part of the Department's adjudicatory proceedings. Indeed, were we to review directly the General Counsel's opinion in this case, which was rendered to aid the chairman in adjudicating an appeal to the Board by a particular veteran, we might be issuing an advisory opinion—which we may not do.

### CONCLUSION

The petition for review is dismissed for lack of jurisdiction.

*DISMISSED.*